IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                                              CR 14-2563 MCA

MELVIN RUSSELL,

        Defendant.

**DEFENDANT MELVIN RUSSELL'S SECOND MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF SUSAN ELDRED, AND/OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING CONCERNING THE SAME**

        COMES NOW, Defendant Melvin Russell, by his appointed CJA counsel, Mark H. Donatelli and Paul M. Linnenburger of Rothstein Donatelli LLP, and, pursuant to U.S. Const. amend V; U.S. Const. amend. VI; U.S. Const. amend. XIV; Fed. R. Evid. 401; Fed. R. Evid. 402; Fed. R. Evid. 403; Fed. R. Evid. 703; and Fed. R. Evid. 704; and hereby requests this Court exclude the proposed testimony of Nurse Susan Eldred at trial, and/or, in the alternative, conduct a hearing pursuant to *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), prior to trial to determine the admissibility of the same. In support thereof, Defendant Russell states as follows:

I.      INTRODUCTION

    A.    *Factual Background*

        At approximately 6:00 p.m. on May 20, 2014, the alleged victim (C.E.) arrived at the San Juan Regional Medical Center in Farmington, New Mexico ("SJRMC"). She exhibited outward signs of intoxication and admitted to staff that she had been drinking. (Her blood alcohol content was measured at nearly four times the legal limit - .298). C.E. informed SJRMC staff she

already made a report to law enforcement concerning an alleged sexual assault and that she was "[h]ere asking for [a] SANE exam."

C.E. complained that she was attacked, kicked and choked. However, SJRMC staff noted only "some minor contusions…but nothing severe." The SJRMC further found no evidence of "intra-thoracic, intra-abdominal or intra-pelvic injuries," and C.E.'s charts show her neck showed no signs of tenderness "to palpation." C.E. was admitted to SJRMC for observation, but her charts clearly read "No, this is not a trauma patient."

Shortly after midnight on May 22, 2014, Susan Eldred of the Sexual Assault Services of North West New Mexico arrived at the SJRMC. After some further delay, Eldred conducted the SANE examination C.E. repeatedly demanded. Eldred documented alleged injuries and C.E.'s statements.

B.   *The Government's Proffer*

The United States now proposes Eldred "will testify regarding to [*sic*] the contents of her report and examination of [C.E.]." (Doc. 76, p. 2). The United States further proposes to present testimony from Eldred that the alleged injuries to C.E. "are indicative of non-consensual intercourse" and "are consistent with the version of the events that were provided by [C.E.] and that the injuries were consistent with the forced penetration of [C.E.]'s vagina by a penis." (Doc. 76, p. 2).

C.   *Introduction to Argument*

The Government has not made a sufficient showing as to the admissibility of the proposed testimony. Specifically, the Government has failed to comply with the requirements of *Daubert*. The Government has not shown (1) that Eldred has appropriate qualifications to provide expert testimony in this case, or (2) that the proposed testimony is sufficiently *reliable* to

justify admission.  Further, based on the Government's proffer, the proposed testimony fails the basic requirements of Rule 403.  As shown herein, the proposed testimony of Eldred is thus inadmissible and should be excluded from trial.

II.     ARGUMENT

As the proponent, the Government bears the burden of showing by a preponderance that Eldred's testimony is admissible.  *Squires v. Goodwin*, 829 F.Supp.2d 1041, 1048 (D. Colo. 2011); *United States v. Gutierrez-Castro*, 805 F.Supp.2d 1218, 1225 (D.N.M. 2011).  The Government must show: (1) Eldred has the "knowledge, skill, experience, training or education" to render a *qualified* opinion on the facts of this case; and (2) her opinions are "reliable" under the principles of *Daubert*.  *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001); Fed. R. Evid. 702.  The Government has not satisfied either of these foundational requirements.  Unless and until the Government proves otherwise at a *Daubert* hearing, the testimony is inadmissible.

### A. The Government Has Not Shown Eldred Has the Requisite Expertise

The Government proposes that Eldred testify as to her "expert" opinion that the injuries she observed were "indicative of non-consensual intercourse."[1]  (Doc. 76, p. 2).  To present such testimony, the Government must prove Eldred is qualified to opine on these matters.

#### 1. *The lack of qualifications generally*

According to the Government's Notice of Intention to Offer Expert Testimony, Eldred "is

---

[1] While the Government may avoid using the term causation, it is clearly their intent to present "expert" testimony that the injuries were caused by non-consensual intercourse.  If, as the Government claims, the purpose of the testimony is solely to discuss "indications," then it is irrelevant and immaterial.  After all, the alleged injuries can just as easily be "indicative" of any number of events or conditions, including, but not limited to, C.E.'s known medical conditions, consensual activities, potential clumsiness, etc.

a certified Sexual Assault Nurse Examiner with the Sexual Assault Services of Northwest New Mexico." (Doc. 76, p. 2). However, the Government provided no documentation supporting Eldred's qualifications. Furthermore, it is unknown precisely what the Government means by "certified Sexual Assault Nurse Examiner." For instance, what body or agency "certified" Eldred as a "Sexual Assault Nurse Examiner"? What specific training did Eldred undertake to become certified in sexual assault nurse examination? If she did undergo specific training, where was that training? How long ago was the training? Was there testing involved? The Government provided no answers to these key questions, and without this information the Court should not accept Eldred as an expert.

Counsel notes that an independent attempt was made to locate information relating to Eldred's possible qualifications. However, counsel's investigation did not uncover any biography of any of the nurses associated with SAS, including Eldred. Although counsel has learned that Eldred became a licensed nurse in New Mexico less than one year prior to the date of the examination in this case, further information concerning her background and experience has not been located.

At this time, the Government has done little more than point out that Eldred has a nursing degree and works in some capacity as a nurse. It has not shown that Eldred retains the skill, experience and knowledge necessary to determine her opinion has a substantial foundation and will aid the trier of fact in this case. Accordingly, the proposed testimony is inadmissible. *Squires*, 829 F.Supp.2d at 1048.

    2. *The lack of necessary specific expertise*

Furthermore, the Government did not provide any information supporting a finding that Eldred has any experience or training in specific areas that are crucial to any opinion as to the

alleged injuries of *this* alleged victim in *this* case. Discovery produced by the Government documents particular chronic ailments of C.E. that were reported within her SJRMC records, namely anemia and advanced chronic liver disease. It is widely acknowledged within the medical community that these specific diseases contribute to relative ease of bruising and concerns related to clotting. Because those specific diseases may drastically affect how a *qualified* medical professional will analyze and consider evidence of bruising and potential causes for the same, it is necessary for Eldred to have expertise in that specific area to testify concerning the potential cause of injury as the Government proposes.

Defendant Russell submits that any general experience as a nurse, even a SANE nurse, is insufficient. While expert witnesses without specialization may still provide testimony "within the confines of his subject area," the witness must still possess sufficient skill, experience or knowledge in the particular field for their opinion to "rest on substantial foundation and would aid the trier of fact in his search for truth." *Squires*, 829 F.Supp.2d at 1048 (citing *Ralston*, 275 F.3d at 969). The Government has not shown Eldred has the skill, experience and knowledge for her opinion to "rest on a substantial foundation" in the context of this *particular* case. There has not been a showing that Eldred is qualified to give an opinion as to the *specific* issues presented by the unique facts of this case. *Ralston*, 275 F.3d at 970 ("merely possessing a medical degree is not sufficient to permit a [nurse] to testify concerning any medical-related issue."); *Alexander v. Smith & Nephew PLC*, 98 F.Supp.2d 1287, 1292 (D. Ok. 2000)(a medical degree does not make witness an expert on all things medically related).

      B.   <u>The Government Has Not Shown Eldred's Opinion is Sufficiently Reliable</u>

In addition to showing Eldred is qualified, the Government must show that her opinions are sufficiently reliable. *Ralston*, 275 F.3d at 969. "The Court cannot rely on an expert's mere

assurance that the methodology and data are reliable.  The Court does not focus on an expert's conclusions but on whether [her] principles and methodology are sound.  If any step renders [Eldred]'s opinion unreliable – either in the choice of methodology or its application – [her] opinion is inadmissible." *Alexander*, 98 F.Supp.2d at 1293.  It is the Government's responsibility to provide evidence showing the reasoning and methodology underlying Eldred's proposed testimony is scientifically valid.  *Gutierrez-Castro*, 805 F.Supp.2d at 1225.  At this time, the Government has not satisfied its burden.  Moreover, the fact that Eldred did not use standard medical practices indicates the Government cannot satisfy its burden.

In the context of medical testimony regarding the potential cause of injuries, reliability is generally established by "some sort of differential diagnosis or attempted elimination of other causes."[2]  *Alexander*, 98 F.Supp.2d at 1294, n. 4; *Magistrini*, 180 F.Supp.2d at 609.  This is because differential diagnosis is an established and accepted medical practice that has been found reasonably reliable for purposes of expert testimony.  *Alexander*, 98 F.Supp.2d at 1294, n. 4 (listing cases); *see also Ronwin v. Bayer Corp.*, 332 Fed.Appx. 508, 514 (10th Cir. 2009)(unpublished); *Magistrini*, 180 F.Supp.2d at 609; *Guinn v. Astra Zeneca Pharm. LP*, 602 F.3d 1245, 1253 (11th Cir. 2010).  Thus, Courts often reject proposed expert testimony as unreliable when the witness has failed to consider and eliminate other potential causes.  *See e.g. Alexander*, 98 F.Supp.2d at 1294 (finding medical expert testimony unreliable and inadmissible because the method, which failed to consider and eliminate other potential causes for injuries, was unreliable); *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 783 (10th Cir. 1999)(upholding

---

[2] Differential diagnosis is a term commonly used to describe the standard method of medical diagnosis which examines the results of physical examinations, medical history, clinical tests and laboratory tests to determine possible causes of medical issues and then eliminating each of the potential causes until one cannot be ruled out or determining which of those that cannot be excluded is the most likely cause.  *See Magistrini*, 180 F.Supp.2d at 609.

exclusion of medical doctor's proposed expert testimony, noting that "Scientists whose conviction about the ultimate conclusion of their research is so firm that they are willing to aver under oath that it is correct prior to performing the necessary validating tests may properly be viewed by the district court as lacking the objectivity that is the hallmark of the scientific method."); *Guinn*, 602 F.3d at 1254 (discussing medical expert testimony and noting "temporal proximity is generally not a reliable indicator of a causal relationship"); *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999)(finding a lack of foundation for admission of medical testimony without data to support ruling out other causes of physical complaints).

Eldred's report shows she did not conduct any sort of differential diagnosis or otherwise attempt to eliminate other potential causes of the injuries. By the time she saw C.E., there was no medical reason for her attention and Eldred failed to use standard reliable medical methodology in reaching her conclusions. For instance, there is no indication that she took a full history, examined testing results, or considered possible alternative causes of the alleged injuries prior to opining the injuries were related to "non-consensual intercourse" the night before. Her conclusions appear to be based solely on the testimonial statements of C.E., which served to support Eldred's pre-formed conclusion. She never considered other available and known potential causes, including C.E.'s admission to recent consensual intercourse, C.E.'s history of anemia and chronic liver disease, or C.E.'s apparent dangerous and risky lifestyle (as ordered by C.E.'s available medical records highlighting her substance abuse and injury-prone activities).

"Absent indicia of reliability based upon the *Daubert* factors or a valid differential diagnosis, all that is left to support [Eldred]'s causation conclusions is [her] own *ipse dixit*" and that is insufficient. *Ronwin*, 332 Fed.Appx. at 514; *see also Charley*, 189 F.3d at 267 (discussing foundational problems for expert testimony when record contained no indication as "to what

degree [the proposed expert] relied on her purely subjective views."). "We require an opining physician to offer an opinion with a reasonable degree of medical certainty; a hunch, even an educated hunch, is not enough." *Warren v. Tostove*, 240 Fed.Appx. 771, 773 (10th Cir. 2007). In this case, the Government has presented nothing to show that Eldred's opinion carries with it "a reasonable degree of medical certainty," or evidence of her methodology to support her conclusions. Based on this insufficient showing, the testimony should be excluded. *See Alexander*, 98 F.Supp.2d at 1293. At a minimum, the Court should hold a pre-trial *Daubert* hearing.

  C. <u>The Proposed Testimony Fails to Satisfy the Requirements of Rules 401 and 403</u>

Regardless of the above, based upon the Government's proffer, the proposed testimony fails to satisfy the dictates of Rules 401 and 403. It is irrelevant and any possible limited probative value is vastly outweighed by the danger of unfair prejudice, confusion and potential to mislead the jury.

  1. *The proposed evidence does not satisfy Rule 401*

The Government proposes a nurse, uninvolved in the actual medical treatment or care of C.E., testify that her injuries were "indicative of non-consensual intercourse." (Doc. 76, p. 2). Such testimony requires a substantial leap of faith from the reality of the situation. The full medical records provided in discovery do not indicate injuries necessarily "indicative of non-consensual intercourse" any more than indicative of an innumerable number of incidents. Those records show C.E. had "some minor contusions…but nothing severe." They indicate there is no evidence of "intra-thoracic, intra-abdominal or intra-pelvic injuries." Even C.E.'s admittance to SJRMC is specifically qualified in the records with the statement "No, this is not a trauma patient." It is evidence that the "injuries" that Eldred will testify to are essentially bruises and

nothing more. Even then, those bruises show a large discrepancy in appearance and neither Eldred nor any other medical professional has sought to determine the age of any one of them.

Under the particular circumstances of this case, common sense shows the "injuries" C.E. presented would be just as "indicative" of a vast, almost limitless expanse of possible events. Her known issues with anemia and chronic advanced liver disease make her especially prone to easy bruising through any number of events and activities that are potentially present in this case, such as consensual intercourse,[3] a non-sexual assault,[4] stumbling in the dark while intoxicated,[5] a car accident,[6] and even every-day contact with other persons and objects.[7] The reality is that, given her condition, almost any contact could result in bruising.

There are far too many potential causes of bruising of this type for an individual in C.E.'s specific condition. The proposed testimony cannot "make a fact more or less probable than it would be without" the testimony. Fed. R. Evid. 401. Eldred's testimony is thus inadmissible.

 2.  *The proposed evidence does not satisfy Rule 403*

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595. Thus, this Court has more control over the proposed testimony under Rule 403 than it may over lay witness testimony. *Id.* Defendant submits it is appropriate for the Court to exercise that control in this case because, given the circumstances of

---

[3] C.E. admitted to having intercourse within five days of appearing at the SJRMC.
[4] C.E. was previously seen at SJRMC as a result of an unrelated alleged assault for which the Government has not provided any discovery and has a history of involvement in domestic violence incidents with other individuals (not Russell).
[5] C.E. appeared with a history of severe alcoholism and it was not unusual for her to stay in other individual's homes.
[6] C.E. has multiple arrests related to driving while under the influence.
[7] As a qualified medical professional would admit, C.E. is subject to easy bruising as a result of her chronic anemia and liver disease exacerbated by her continuing excessive alcohol consumption.

this case, any possible limited probative value would be substantially outweighed by the danger of unfair prejudice, confusion, and the potential to mislead the jury.

The same concerns outlined above also show there is a danger of unfair prejudice that will outweigh any small probative value of the evidence. The proposed "expert" testimony of Eldred clearly has, at best, severely limited probative value, relevance and reliability due to Eldred's failure to follow established medical procedures or other reliable method to reach her conclusion. Despite its questionable reliability, jurors will likely assign it an "aura of special reliability and trustworthiness" that is unwarranted. *See United States v. Pires*, 642 F.3d 1, 12 (1st Cir. 2011)(recognizing jurors may assign more weight to expert testomy than is deserved because of an "unwarranted aura of special reliability and trustworthiness"); *see also United States v. Fosher*, 590 F.2d 381, 383 (1st Cir. 1979)(citing cases in agreement).

This danger of unfair prejudice is especially heightened in this case because the Government proposes the witness testify as both a fact witness and an expert. *United States v. Christian*, 673 F.3d 702, 712 (7th Cir. 2012). Given such a dual role, witnesses may be viewed differently by the jury, who may "be smitten by the expert's aura of special reliability and therefore give his factual testimony undue weight." *Id.* (internal quotations and citations omitted). At the same time, the "glow from this halo [of aura of special reliability] may extend to an expert witness's fact testimony as well, swaying the jury by virtue of his perceived expertise rather than the logical force of his testimony." *United States v. Upton,* 512 F.3d 394, 401 (7th Cir. 2008)(internal quotation and citation omitted). This is especially prejudicial in this case because Eldred's proposed fact testimony is not necessarily corroborated by the other medical evidence. Exclusion of the proposed expert testimony is thus appropriate.

Furthermore, Eldred's dual role will serve to confuse and mislead the jury. *Christian*,

10

673 F.3d at 712 (recognizing dual role witnesses may confuse the jury). In particular, Eldred apparently is not prepared to discuss C.E.'s known medical conditions or the manner in which they alter how easily her body bruises and how quickly she is able to heal therefrom. A jury is likely to be confused and mislead because the Government's proposed evidence does not address the reality that bruising in a person with anemia and liver disease simply is not the same as bruising in an otherwise healthy individual. The proposed testimony is thus severely misleading and the Government should not be permitted to present only a small portion of the information that is necessary for a truly reliable analysis. The testimony should be excluded pursuant to Rule 403.

## POSITION OF THE GOVERNMENT

Counsel for Mr. Russell has contacted Assistant United States Attorneys Kyle Nayback and Joseph Spindle concerning this Motion and the relief requested herein, and Mr. Nayback indicates the United States objects to the relief requested herein.

WHEREFORE, the Defendant Melvin Russel, respectfully requests this Court exclude the proposed testimony of Susan Eldred at trial or conduct a pretrial *Daubert* hearing.

Respectfully submitted:

ROTHSTEIN DONATELLI LLP

By:  */s/ Mark H. Donatelli   December 12, 2016*
MARK H. DONATELLI
PAUL M. LINNENBURGER
1215 Paseo De Peralta
P.O. Box 8180
Santa Fe, NM  87504-8180
(505) 988-8004
(505) 982-0307 (Fax)
*Attorneys for Defendant Melvin Russell*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on the 12th day of December, 2016, I filed this pleading electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kyle T. Nayback
Assistant U.S. Attorney
U.S. Attorney's Office
District of New Mexico
P.O. Box 607
Albuquerque, New Mexico 87103
Email:  kyle.nayback2@usdoj.gov

Joseph Michael Spindle
Assistant U.S. Attorney
U.S. Attorney's Office
District of New Mexico
P.O. Box 607
Albuquerque, New Mexico 87103
Email: Joseph.Spindle@usdoj.gov

                                */s/ Mark H. Donatelli   December 12, 2016*
                                ROTHSTEIN DONATELLI LLP